UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMANDA W.,[1]

        Plaintiff,

      v.                                                                24-CV-916 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## DECISION AND ORDER

Plaintiff Amanda W. brought this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) of the Social Security Act, seeking review of the decision of the

Commissioner of the Social Security Administration that she was not disabled.  Dkt.

1.  Plaintiff moved for judgment on the pleadings.  Dkt. 10.  The Commissioner

responded and cross-moved for judgment on the pleadings, to which Plaintiff

replied.  Dkts. 12, 13.  For the reasons that follow, the Court denies Plaintiff's

motion and grants the Commissioner's cross motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing
Order regarding the naming of plaintiffs in Social Security decisions, this decision
and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), both filed on July 13, 2022.[2] Tr. 266–77.[3] Plaintiff's applications were initially denied, and she requested a hearing before an administrative law judge ("ALJ"). *Id.* at 181–200, 211–12. Following the hearing, at which Plaintiff was represented by counsel, ALJ Stephen Cordovani issued a decision finding that Plaintiff was not disabled. *Id.* at 16–31. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. *Id.* at 1–3; Dkt. 1.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive

---

[2] Plaintiff applied for both DIB and SSI. To receive DIB, a claimant must show that she became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022). SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (citation modified). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filing at Dkt. 6 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 6 are hereby denoted "Tr. __."

when supported by substantial evidence. *See Biestek v. Berryhill*, 589 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.    DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* §§ 404.1572, 416.972. If the

3

ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to

4

perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. *Id.* §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

## I.    THE ALJ'S DECISION

To begin, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2019, her alleged onset date. Tr. 18. The ALJ also found that Plaintiff suffered from the following severe impairments: "endometriosis, asthma, multiple sclerosis, and chronic pain syndrome or fibromyalgia." *Id.* at 19. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22–23.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff can have] 4-hours of standing and walking; no climbing of ladders[,] ropes[, or] scaffolds; no balancing as that term is

5

> defined in the SCO; no working around hazards such as unprotected heights or moving mechanical parts; [she] can maintain attention, concentration[,] and regular attendance for simple[,] unskilled work; and [she] can engage in frequent interaction with supervisors, co-workers[,] and the general public.

*Id.* at 23.

The ALJ then found that Plaintiff was unable to perform any past relevant work. *Id.* at 29. But the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. *Id.* at 30. As such, according to the ALJ, Plaintiff had not been under a disability from her alleged onset date through the date of the decision. *Id.* at 31.

## II.    PLAINTIFF'S ARGUMENT

Plaintiff raises three arguments. *See* Dkt. 10-1 at 13–18. First, Plaintiff argues that the ALJ failed to determine whether Plaintiff's use of a cane was medically necessary. *Id.* at 13–15. Second, Plaintiff argues that the ALJ's step-two determination—that Plaintiff's mental impairments were non-severe—was not supported by substantial evidence. *Id.* at 16–17. Finally, Plaintiff argues that the Appeals Council erred by rejecting records of Plaintiff's psychiatric hospitalization and declining to review Plaintiff's claim. *Id.* at 17–18. For the reasons that follow, the Court disagrees.

## III.   ANALYSIS

### A. The ALJ evaluated properly Plaintiff's need to use a cane.

For an ALJ to find that a claimant's use of an assistive device is medically necessary, "there must be medical documentation establishing the need for [that] device to aid in walking or standing." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). That "documentation must describe the circumstances for which [the assistive device] is needed (*i.e.*, all the time, periodically, or only in certain situations; distance and terrain; and other relevant information)." *Leda I. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 27, 32 (W.D.N.Y. 2021) (citation modified). If the record contains such documentation, the ALJ must incorporate the claimant's use of an assistive device into the RFC. *See Scott v. Berryhill*, 2018 WL 4442882, at *5 (W.D.N.Y. Sept. 17, 2018).

Here, the record before the ALJ did not contain medical evidence establishing the need for Plaintiff to use an assistive device. For example, at a July 10, 2023, visit with Jennifer Buyea, FNP—the same day that NP Buyea prescribed Plaintiff assistive devices—NP Buyea noted that Plaintiff was able to "ambulate[] without assistance," had "normal gait and station," and had "normal . . . motor strength." Tr. 978–83. Plaintiff's subsequent visits with NP Buyea yielded similar examination results. *See id.* at 966–70.

Moreover, as the ALJ noted, Plaintiff appeared at a September 6, 2022 visit with Nikita Dave, M.D., without the use of an assistive device. *See id.* at 26. At that visit, Dr. Dave reported that Plaintiff had a normal stance, needed no help

7

changing for the exam or getting off of the exam table, and was able to rise from her chair without difficulty. *Id.* at 583.

Based on that evidence, the ALJ concluded that Plaintiff was able to "ambulat[e] without [an assistive device] despite her assertions that she need[ed] the same." *Id.* at 27. Plaintiff takes issue with the ALJ's failure to state explicitly that Plaintiff's "use of a cane and/or walker was not medically necessary." Dkt. 10-1 at 15. But "[a]n ALJ does not have to state on the record every reason justifying a decision." *Valdez-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)). Instead, so long as an ALJ's decision provides "an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," there is no error. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). That is the case here.

In sum, the ALJ's repeated references to Plaintiff's use of assistive devices indicate that the ALJ sufficiently considered the issue. *See Hoke v. Colvin*, 2015 WL 3901807, at *12–13 (N.D.N.Y. June 25, 2015) ("disagree[ing] with [Plaintiff]'s contention that the ALJ did not properly consider [his] need for an assistive device," where the ALJ reviewed the medical evidence in the record and Plaintiff's testimony about his cane use). And the ALJ's explicit finding—that Plaintiff could ambulate without an assistive device—assures the Court that the ALJ complied with the requirements of SSR 96-9P. *See* Tr. 27; *see also* SSR 96-9P, 1996 WL 374185, at *7. Because the ALJ was "entitled to weigh all of the evidence available

8

to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did that, the ALJ's decision was supported by substantial evidence, and the Court will not second-guess it, *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

### B. Substantial evidence supports the ALJ's step-two determination that Plaintiff's mental impairments were non-severe.

At step two of the disability determination, an ALJ must "consider[] whether [a] claimant has a severe impairment which significantly limits [his or her] physical or mental ability to do basic work activities." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). In this regard, an ALJ "will generally conclude that [a claimant's] impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

To determine the severity of a claimant's medically determinable mental impairments, the regulations require that an ALJ apply the "special technique." *See id.* § 404.1520a(a). That technique requires an ALJ to "consider [four] broad areas of mental [work-related] functioning." *Id.* § 404.1520a(c)(3). Those areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* If an ALJ finds no more than a "mild" limitation in any of the four areas, then the ALJ will find a claimant's medically determinable mental impairments to be non-severe. *See id.* § 404.1520a(d)(1).

9

The ALJ applied the special technique here, finding that Plaintiff was: (1) mildly limited in understanding, remembering, or applying information; (2) mildly limited in interacting with others; (3) mildly limited in concentrating, persisting, or maintaining pace; and (4) mildly limited in adapting or managing herself. *See* Tr. 20–22. The ALJ concluded that, "[b]ecause [Plaintiff's] medically determinable mental impairments cause . . . no more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they are non-severe." *Id.* at 22. Substantial evidence supported the ALJ's findings.

For example, the ALJ considered the opinion of Dr. Ransom. *Id.* at 28. Dr. Ransom opined that Plaintiff had "no evidence of limitation" in maintaining personal hygiene; dressing appropriately; understanding, remembering, and carrying out simple and complex instructions; and using reason and judgment to make work-related decisions. *Id.* at 577–78. Dr. Ransom also found that Plaintiff had only "mild limitation[s]" in interacting appropriately with supervisors, co-workers, and the public; sustaining concentration and performing at a consistent pace; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. *Id.* at 577. Dr. Ransom concluded that "[t]he results of the evaluation [we]re consistent with mild psychiatric problems that may interfere with [Plaintiff's] ability to function on a daily basis." *Id.* at 578.

The ALJ also considered the opinions of O. Fassler, Ph.D., and L. Dekeon, Ph.D., both state agency consultants. *See id.* at 28–29. Dr. Fassler opined that

Plaintiff had no limitation in understanding, remembering, or applying information and interacting with others and only a mild limitation in concentrating, persisting, or maintaining pace and adapting or managing herself. *Id.* at 127. Dr. Fassler concluded that Plaintiff's medically determinable mental impairments were at most mild and non-severe. *Id.* at 128. Dr. Dekeon later reviewed the record and found, like Dr. Fassler, that Plaintiff's psychiatric impairments were "non-severe overall." *Id.* at 160.

The opinions of Drs. Ransom, Fassler, and Dekeon were sufficient to support the ALJ's finding that Plaintiff's mental impairments were non-severe. *See Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."). The ALJ's step-two determination, therefore, was supported by substantial evidence. *See Cichocki*, 729 F.3d at 177.

**C. The Appeals Council properly declined to review Plaintiff's claim.**

The regulations require the Appeals Council to review a denial of benefits if the Appeals Council receives additional evidence that: (1) is new; (2) is material; and (3) relates to the period on or before the date of the ALJ's decision. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (citing 20 C.F.R. § 404.970(b)). If a reviewing court determines that "the Appeals Council has failed to fulfill its obligations under [section 416.970(b)], the proper course for the reviewing court is to

11

remand for reconsideration in light of the new evidence." *Wilbon v. Colvin*, 2016 WL 5402702, at *5 (W.D.N.Y. Sept. 28, 2016).

Plaintiff argues that the Appeals Council erred because its explanation for declining review—that Plaintiff's newly submitted evidence did "not show a reasonable probability that it would change the outcome of the decision"—was conclusory and improper. *See* Dkt 10-1 at 18. But the Appeals Council was not required to consider that evidence because it was not "new." *See Webster v. Colvin*, 215 F. Supp. 3d 237, 242 (W.D.N.Y. 2016) (finding that evidence is "new" if it "did not exist until after the ALJ's decision and was not merely cumulative of other evidence in the record").

Here, Plaintiff submitted records of an October 2019 psychiatric hospitalization stemming from an intentional drug overdose and suicide attempt. *See* Tr. 38–62. Those records predated the ALJ's decision, which was issued in January 2024, by more than four years. *See id.* at 31. Plaintiff, therefore, had ample time to submit them to the ALJ for review. But Plaintiff failed to provide them prior to the ALJ's decision, and, as such, the Appeals Council was not obligated to consider them. *See Daniella A. v. Comm'r of Soc. Sec.*, 2023 WL 155424, at *2 (W.D.N.Y. Jan. 11, 2023) (finding that records submitted to the Appeals Council dated two weeks before Plaintiff's hearing were not "new").

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 12) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 10).  The Clerk of the Court shall close this case.


SO ORDERED.


Dated:       June 22, 2026
             Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

13